The record of this case is no longer one of the faulty cases, and the verdict on it is mine. First case, 2-17-0775, David D. Walker, plaintiff's attorney. He now will take the loss as Winnebago County State's attorney, defendant Kathleen. Case 2-17-0779, Martin Williams, plaintiff's attorney. He now will take the loss as Winnebago County State's attorney, defendant Kathleen. Arguing on behalf of the plaintiff's attorney, Mr. Robert L. Kaplan. Arguing on behalf of the defendant's attorney, Ms. Shelly McClurk. Mr. Kaplan. Board of Directors, Counsel, may I please report? My name is Robert Kaplan, and I'm the one who... My name is Robert Kaplan. I appreciate the reminder because I don't want to have difficulty hearing Ms. McClurk. She's not here in the microphone. Okay. There are always the attorney involved with this. Mr. Walker and Ms. Williams each filed cases by themselves, and I got the case, filed the medical complaints. Trying to clean up what they did to the basic allegations, then adding a claim for attorney's fees. What we have with Mr. Walker, the question of whether or not he got the right transcript, whether or not he got a list under Section 5, whether that was proper. Then we have the itinerary, the call sheet of the grand jury, and then deliberation and vote. Mr. Williams did not ask for a transcript or worry about the Section 5. He did worry about deliberation and vote, and he did worry about the call sheet, the itinerary, and he also added on he wanted a copy of the true bills and no bills. So we have, there are two issues for each one that directly are going together. The case was heard in the trial court together. Without any distinction, we would make arguments for the individual parties as was necessary because Williams had nothing to do with the Section 5 list or the transcript. When it came to what's before the grand jury, yeah, that was put together. Now, the court did ask that we prepare to talk about In re-appointment of special prosecutors. Yes. Which is interesting because it is an unpublished opinion of an unpublished opinion I cited. Normally you don't cite unpublished opinions. But each one of these cases The first district case was published. Pardon? The first district case was published. Okay. It's a published opinion. The Supreme Court affirmed. Oh, yes, but in that regard, okay. I looked at the point where I cited it. It wasn't published yet. And this is that review which lays where I had that this is not final in and of itself. However, that does not mean that we can ignore the wisdom that they cited. Other cases are precedential that each case did cite. So it is of value in that regard. And the concepts are not that familiar. One thing I did notice in doing the special prosecutor case Is that one of my arguments may have to be adjusted. Because I was arguing that if something does not actually occur in the grand jury Such as the itinerary list was made by secretaries of the state's attorney at that time Then those things should not be occurring before the grand jury. Well, as I better read special prosecutor, I'm not sure that's true. The mere fact that it wasn't curated before them does not mean it wasn't a matter before them. You have to look at the various factors to see whether or not It is something that can be disclosed or not be disclosed. And after doing so, I still come to the same conclusion that they are disclosable. Because all it is is a list of cases that are going to be presented to the grand jury. And we haven't gone so far as meeting the trial court or this court to say that If there is somebody whose name was on that list, which the state's attorney wanted to indict And he was not indicted, don't show us that name. Black it out, redact it, cut it out. We don't have no right to know. We don't want to know. The purpose of that was to protect people's reputation for being improper. So if somebody is saying, gee, you were indicted. Well, if he's indicted, somebody may say, you're a bad guy. Well, that's not what should happen. If you were indicted, there was no probable cause. But did you change, did you argue that before the trial court or did you sort of change your mind later? No, I think we said that to the trial court. Okay. Redact any references to people who were not indicted. Yeah, you can redact those people. And in any event, if I didn't, I'm saying it now, that has to be removed from the request. So we don't need that, but that can be redacted from the list of people who were indicted. I'm curious, without disclosing strategy, how is it relevant or material? To who? You or anybody. Oh, the easy answer is there are some circumstances where you have to show why you want the information. And we did discuss that a little bit in the briefs. But if you want a public record, you have a right to the public record because you want the public record. I know that you don't have to give a reason. Right. And you're asking me for the reasons, but I understand what you're saying. Well, there is a policy relative to grand juries that they should remain secret unless good cause shown. I'm trying to figure out what good cause is, and I don't see how there's good cause if I don't see that it relates to anything. Because I'm jeopardizing the secrecy of the grand jury for something that doesn't seem to be supported by some contrary public policy. The special prosecutor case talked about a particularized interest to know. Is that what we're dealing with? Do I follow that? I don't know because I'm somewhat befuddled by why an itinerary has – Nathaniel, somebody, I think it was. Three people, Harper, Carter, and Walker were involved in this matter. Okay. So if the itinerary shows all three names on the same date, that might imply or infer that the grand jury heard simultaneous testimony, assuming that it actually happened. Okay. Well, you have the benefit, if it is a benefit, to be on the panel that decided Walker's appeal, where he alleged that the state's attorney made a fraudulent statement to the court by saying that the court reporter gave him his transcript, the Walker transcript, but merely put the Carter's name on it in error. Okay. Now, that case, as I read that case, I understand to me that if the transcript – remember, his name was on it, but this is a legitimate grand jury investigation. And there's enough in there to indict Walker that he could be indicted on that regardless of whether he was the object or not of that particular investigation. Okay. So – but Walker has been, as he tells me, this is my life, dependent upon him, and he's trying to look for every legal avenue he can to reverse the conviction. That is his right, and it is my obligation, unless I find it frivolous, to go forward with it. Mr. Kaplan, can you clarify something on the Walker case? Didn't you argue that the trial court erred because it did not want to disclose the itinerary record sheet? Didn't you argue that before the trial court, that it should have been disclosed? I didn't. You didn't ask for that? On the other case? On this case, on Walker. Oh, yeah. We're arguing that the itinerary sheet should be disclosed because it was not a matter occurring before the grand jury because the state's attorney prepared it in his offices. And even so, if it did, it does not list any of the strategy. No, but you have the same problem. If you produce the itinerary sheet, you would reveal the names of those that were indicted, true, but you might also reveal the names of potentially innocent people who were not indicted. That's why I suggested earlier that those names should be redacted. So you're now telling me you're changing your position, then? Yes. We changed the position of the trial court. We said that you don't have to give us the names of the people who were innocent or were not indicted. Don't want to know anything about them. But those who were indicted, those names are now public record. So there is no more secrecy. Well, you have access to the indictments through the circuit court clerk's office as well. Well, yeah. Correct. But I'm sorry. Sure. As I read the Freedom of Information Act, it is an independent, stand-alone statute that gives you the right to information unless there's a specific exemption to it. And the fact that, gee, you may be able to get it somewhere else is not a specific exemption to the statute. Maybe you could have gotten this discovery in the criminal case. Maybe you still can't. But this is an independent way of doing it. And anecdotally, I can tell you I've had cases where in other counties, not this county, it's another county that nobody involved with anybody here, said that they came up with statements of witnesses that were made in the investigation. They produced those at trial. If they didn't do it, it would have been a Brady violation. They produced that. And that was done between the pursuance of Supreme Court rules that required them to do so. But a Freedom of Information request was sent to the village. And the village gave us statements that were never produced by the state's attorney pursuant to that court order. And that, as it were, is very valuable to an inmate or to a convicted felon if he wants to challenge his conviction by some sort of a fraudulent purpose to have another way of going about getting it. And law allows it. Okay. Let's go. Let's get back. We're through focus, okay? Okay. The grand jury does not have their own administrator or secretary. You understand that, correct? I did there once. Were you ever a prosecutor? Pardon? Were you ever a prosecutor? No, I represented a witness to tell him to take the Fifth Amendment. Then he got immunity, and I was kicked out. Under the Grand Jury Act in the state of Illinois, similar to other states and federal government, the state's attorney prepares and presents witnesses. The state's attorney prepares and presents subpoenas for the vote of the grand jury. The state's attorney organizes, unless the grand jury requests information, which can occur, or requests to look into a matter, which they have every right to do. But otherwise, the state's attorney prepares the documents relevant to the matters that are presented to and are matters before the grand jury. Do you understand that? That's my assumption. That's the premise of the Supreme Court's rationale in inmate appointment with a special prosecutor. So those are matters that are related to the grand jury and matters that occur before the grand jury. Right. And exposure, public exposure of those could jeopardize the secrecy of the grand jury, the integrity of witnesses, the integrity of the process itself. You understand that? Yes. So that's, so tell us why then that itinerary sheet is not a matter occurring before the grand jury or related to what's presented to the grand jury. Okay. I think under the prosecutor case, I have to say it is related. Okay. I can't even argue it. I have to make an adjustment. Okay. But the other things in there are why do we have secrecy? And is it going to do anything that we're, is it going to identify the witnesses? Is it going to show the substance of what was asked and talked about in the grand jury? Is it going to, is the itinerary sheet going to reveal the name of the person, going to show the strategy? Is it going, is the name on the call sheet going to show the question and answer of the deliberations of jurors? Those are the concerns of the special prosecutor. You see, here's the point. There's a policy behind the decision, behind the Grand Jury Act to protect the secrecy so the courts don't have to flush out every time, well, who's this going to harm? That's not the point. The point is they're exempt under the law, and you cannot get them. I don't understand the law to be that way. And that's why they could be otherwise. Have you read, you've read the in raid appointment of the special prosecutor? I did. And I remember things like they wanted to have statements of the investigation. That definitely wouldn't reveal. The court, how do you ask a question to reveal a good strategy? Yeah, that could be in there. And when I do billing for my clients and my own invoices, I put down almost a journal. Somebody calls me up, I start taking notes right away, and those notes become the base of the description for why I spent all that time on it. Okay, that can very well reveal my strategy. In a certain situation, I would probably redact that if necessary to preserve a client's confidence. But I put enough down to show why this was important. I noticed most of you just put down a discussion with a client, you know, 20 minutes, and that's it. Well, are you doing attorney-client privilege, or are you doing work product privilege? Would I do it myself? I haven't thought about that. I just wanted to make it as comprehensive as possible to show the client why I want this exorbitant amount of money. But my point is if you're going to redact it, why are you going to redact it? If I were to redact it personally? But you did say you were going to redact it. Okay. I don't think I have to because the only time I would use it, well, that's not true either. Normally, the only time you use a fee petition in court was that your client didn't pay you, you're suing your client, and then exempt from the privilege. You can now disclose we won't pay you. But in the situation, let's say I go back and I get a positive ruling from this court for something, I can go back to Judge Vahaska and say, I want attorney's fees based upon that. Then I will have to show him things. Now, the next question is, then I will talk to my client and say, here's the bill. Do you have any objection to me showing the whole bill to the court? And I think the answer would be no. If he says yes, what do you object to? Okay, we'll strike that out. I may end up with coppers with clients for a half hour, which would be okay because I did that. So that is where I would say, one, no need to redact, or number two, why redact, or possibly why I wouldn't have to redact. Mr. Kemp, you raised a number of other issues in your brief. What is this issue about you maintaining there were two separate grand jury hearings, therefore there should have been two separate transcripts? What is your point there? Okay. Walker is not satisfied with the way the state's attorney is identifying a single document when all the indications are that there have to be two. What are those indications? You seem to maintain there had to be two separate hearings. Why would that be the case? To start off with, put down this transcript, which is Walker's transcript, has the wrong name on it. All he had to do, and he did say this, but all he had to say was, this testimony is sufficient to indict Walker. I don't care what that type of page is on. There's absolutely no need to talk about the error of a title page if the document is sufficient. So now that he said that this document, by the way, he was told to get Walker's grand jury transcript. Everything in there, in the court's order, we're going to get your. He asked for mine, you're going to get your transcript. So now he's supposed to get Walker's transcript, not Carter's transcript. So the justifier, I should use that word. So to demonstrate that this is the Walker transcript that has somebody else's name on it, he makes the explanation. This is actually Walker's transcript from Walker's hearing. Well, maybe that makes sense. I mean, you do allow, don't you, for the possibility there was one grand jury proceeding involving the two of them and the testimony related to both of them. It doesn't have to be a separate hearing and a separate date, does it? Not for the purpose of indictment, but for the purpose of getting documents, we have to know whether this is a motion or summary judgment that we were unsuccessful on. We don't have to show that there's one or two. We have to show there's a question of fact whether there was one or two. Well, we said in an unpublished order, People v. Walker, that in that case, in re matter of Nathaniel Carter containing Detective Bredin's testimony, was the testimony in the matter of your client, Mr. Walker. Why isn't that the law of the case? As in to say this is the only one? That's the law of the case. And you're bound by the law of the case unless you can show that this court was palpably erroneous in reaching that conclusion or the facts have changed. And I haven't seen a change in facts or an argument that we were palpably erroneous. In that same case, the court said on July 9th, this is at C-368 of this record, on July 19, 2001, but here it took place at which the defendant's speeding trial rights were at issue. The state told the court that it brought a superseding bill against Nick Carter and a bill on the same day against David Walker. This is not clear to me that it was a single thing. In fact, it indicates there were two separate hearings. If you're going to bring a bill against Carter and a bill against Walker, you're doing two things. And in that way... Mr. Chaplin, you're not answering my question, and I don't mean to be rude. We made a finding. This court reviewed that same issue and made a finding on this issue. Correct? Okay, so it's collateral expense. It's the law of the case. I know, but that's the law of that case. That's the law in this case as well, same parties. My argument would be that to become a law in this case can only be done through collateral estoppel, the brand-new case. Brand-new issues. They're not brand-new issues, though. They're the same issues. I think race judicata applies. Okay, the... Collateral estoppel relates to the same parties, the same transactional cause of action, and things that supposedly could have been brought up but weren't brought up, which are now being brought up for the first time, which, quote-unquote, should have been decided the first time, and it's too late now. Race judicata says, A, therefore B, and therefore C, and that's what happened the first time around. It said, Nathaniel Carter's exhibit or the exhibit entitled Nathaniel Carter was sufficient to indict your client and was sufficient to constitute a record which was presented for purposes. In a way, it's to your advantage because if there is another proceeding, it might be even more incriminating than what is contained in this particular document. Well, he's already been tried and been in prison for 18 years, and he still wants to pursue with this. As far as that situation goes, how do we factor in Judge Daugherty and Judge... I think probably the only one that's preceded Judge Daugherty. In the first FOIA case, they gave us a transcript of Carter. After Biagi sent his walkers, we got the same transcript again, but now it belongs to somebody else. Now, we asked, and then we point out to the judges, how do we know that this is correct? Because what you're showing us is Carter's wasn't walkers. What Biagi says was a different transcript, was walkers. So the direct issue there was the issue whether or not what was being brought to us as Carter's transcript was actually the walkers' transcript. And the court, in that posture, said, no, it's just the Carter transcript. Necessarily negating, for res judicata purposes, that it wasn't the walkers' transcript, it was the Carter transcript. And only because we framed it that way, we put of record what Biagi had said. We put all that of record. And seeing the possible conflict, the court said, no, it's still the Carter transcript. That's it. So now that we know that the document they gave us, now that document as a res judicata given to us in FOIA 1 is the Carter transcript. They gave us the same transcript in FOIA 2. When another judge said, no, forever the law of this case binds upon everyone forever, parties forever, that this transcript, this document is only the Carter transcript. So when they say this is the walker transcript, they are violating the rule of res judicata themselves. The res judicata is stronger than collateral estoppel because collateral estoppel has exceptions like basic fairness that you can't stop somebody from presenting a case. And there has to be precise issues. And the issue in the first walker appeal, the walker got it first. The issue is, is there one transcript or two? The issue is that, is the document we are being given in FOIA 2, the transcript that he asked for in FOIA 2. The issue in walker, people versus walker, was, is this transcript sufficient to sustain the motion to dismiss the 2-1401 petition? And the court said, yes, it was sufficient. On the basis that it had enough information to indict him and there could be possibility of runaway grand juries, which I do disagree with. And I decided in the briefing here why I disagree with. All the statutes seem to say that the grand jury will look at that which is presented to it. And everything we have seen says to it, to it, to it. And to say there is a runaway grand jury, I have to respectfully disagree with that. Now, I'm not sure that's important for this particular argument. But what is important is that the issue was, is whatever document we have, whatever one it belongs to, whatever it is, is that sufficient to indict Walker? The answer is yes. Now, we want to see another document. We want to see a document of Walker. There's indication of the record. There are two. Okay. You say that you said this is, that this is the only transcript, that the only hearing. I'm not sure how that was before the court that you think about it. Your syllogism is lacking an established premise. And that is, is that when grand juries convene, that they only take testimony regarding a particular individual for purposes of a true bill or a no bill, as opposed to having a transactional hearing where they cover everybody and the kitchen sink, which may include, depending on whether it's a football team that, you know, robs a bank, there may be 11 or substitutes. There might be 13 defendants in one proceeding, one hearing, and so on and so forth. So your syllogism has a premise that hasn't been established in my mind, which is that the practice generally is that they only deal with one defendant at a time, and they get up the second time and they say, would your testimony be the same as what you said in Nathaniel Carter? I don't know that that's the case, or whether the case is that they actually go through and come up with new additional testimony, or they bring in an additional witness, or they include a videotape that didn't have Nathaniel Carter, but it had the defendant. So I don't know, and you haven't established the basic premise upon which you say that there has to be two, because there has to be two proceedings. If you're going to rely upon res judicata that are brought, I don't think it's res judicata. You want to go off the target by some manager's error? Well, it may not be if it's what you said it was, which was at 214.01, as opposed to a freedom of information. Right. And put that together with 4.01, which that was res judicata as to the nature of that transcript they gave us. That transcript they gave us in 4.01 was the Carter transcript. We questioned it. It was reaffirmed. That is the Carter transcript. We got the same document again under 4.02, again, calling it the Walker transcript. Not the transcript that would be sufficient to indict him, but the Walker transcript. And the question is, so if we're going to do, I think it was a manager's error for this court to have ruled that there was only one transcript when they didn't see the transcript as being Walker's, if that's what it did, in contradiction to the res judicata that was already established in 4.01. You want to hear a court of review, but when a circuit court makes a statement and nobody challenges it, nobody appeals it, that is just as binding as something you might say. So that judge says, no, this is the Carter transcript. It is not the Walker transcript. And later on, they come back and say, oh, yes, it is the Walker transcript. That can't be done. That is the error of these proceedings. If you want to rely upon that point, that would be my answer to it. I think we've gotten your argument. I mean, I think you've made it very clear what your argument is. But I'm assuming there's other issues you want to raise. Yes, I do. It's mostly summary judgment. And is there a genuine question of fact as to what the identity of the transcripts? You don't have to answer whether it is Carter's or Walker's. You have to be able to say as a matter of law, there's absolutely no doubt that there were two here. If the genuine issue of material fact exists and the right of doubt is not free here, then theoretically it should have been the net. I don't know whether it's here or not. We understand your argument. Okay. Now, to do it, I did mention discovery. We were concluding discovery that might flesh out some of the underlying backstory as to how, why in beyond do you say this is Walker? What about the other folks who were there? Somebody else in the court. And anecdotally, I'm told that when Biagi talked about the transcript being a court-reported error, his associate kind of looked down and said, what are you doing type of attitude? Now, I don't know if that's true. I didn't see it. But I can find out at discovery whether it happened or not. And that's how we can pursue with that. As to the itinerary sheet, I've suggested that you look at all the standards and all the cases as to why you need secrecy. And to why you can have exceptions. Passion of time is one. It's been 18 years. The officer testified. There's no intimidation to him. The man's been convicted. He's in prison. There's nothing to worry about in this case. All the issues that you have in here are not related to Walker's case. What he's asking for does not ask for the site. The itinerary sheet does not give anything away of strategy. Because everything on that sheet that would result in an indictment would be published anyway. So it's not secret. So that's my deliberation vote. I need the linguist's language to say that you can have, other than these things, you can have that. Other than these cups, you can have this dish. Other than this, you can't have this. So other than this, you can't have that. So this is an exemption from the parole district. Are you familiar with Board of Education v. Brasario? It's a second district case from 1986. Are you familiar with that case? To a certain extent. I can't recall right now, but I can tell you a hint. There's a longstanding premise. Even though there may not be some harm caused, the rule is the rule. Other than the deliberations and vote, matters occurring before the grand jury are not to be disclosed. They're exempt. And that provision has been interpreted that way for decades. In reappointment with a special prosecutor is really nothing new. It's been interpreted that way for decades. And we don't, trial courts don't go, just like a trial court doesn't evaluate whether or not there was probable cause. As long as there was some evidence before the grand jury, some competent evidence, that's the end of the inquiry. To preclude the types of inquiries that you're asking this court to rule upon and apparently asking the trial court to rule on. As you said, the true bills, the indictments are public record. They can be kept secret if there's a potential for escape or flight. But other than that, we don't get into the nitpicking of whether or not someone's going to be harmed or something's going to be revealed that's already public record. We don't get into it for public policy reasons that are clearly announced in reappointment with a special prosecutor. And as I said, for decades, that's been the law. There was just, there wouldn't be federal court cases, state courses going into the nitpicking if you don't get into it. They can get into it, pass the time is one reason. They have the secrecy, the reason they have the ability, all that is something that the courts do get into, otherwise you wouldn't see it in here to begin with. They would just say, no, you can't, secrecy, can't do it, come on. That would be the end of it. Were there any other comments that you wanted to make with respect to Williams? Williams was, he wanted to have the no bills and true bills. The no bills, again, should not be produced. The true bills are, unless they've been sealed by the circuit court, are not secret anymore. And though the state's attorney has a copy of that, he should turn it over to Williams. The same, as far as the itinerary, he is in the same position as Walker does. There was one more thing I'd like to say, one more moment. I think I've covered all the arguments through the time allowed to me, and I think if I said something more at this stage of the record, I might repeat myself. Thank you all. Thank you. You'll have time for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Charlotte LeClair. I represent State's Attorney Marilyn Height-Ross, the current holder of the office. State's Attorney Joe Briscato was in the office at the time that these four requests were made. I can't get any closer. Same arguments apply. I will try to speak louder. Thank you. I'd like to address the two arguments that are specific to Mr. Walker first, and then the other ones go to both of them. As to the transcript that resulted in Mr. Walker's indictment in 01-CF-1358, I think Mr. Kaplan and Mr. Walker are really complicating a very simple issue. Under FOIA, he requested a copy of the grand jury transcript that resulted in his indictment in 01-CF-1358. He was provided with a copy of the transcript with Nathaniel Carter's name on the front page. Same transcript he was given in the criminal case, same transcript he's been given several times. This Court in People v. Walker has determined that that is the transcript that resulted in his indictment in that case. So he was provided with the document he requested. Now, I know I used collateral estoppel. I'm understanding that that was the wrong term, so I apologize. But I do think res judicata applies in this case, and the fact that that is the transcript he requested. So there is no violation of FOIA. He was given a copy of the document he sought. He seems to be a little hung up on two separate hearings. What do you understand his argument to be? Quite honestly, I don't. The language that he's referring to was that the State made in the criminal case that they brought a superseding bill against Nate Carter and a bill on the same day against David Walker. So two bills were brought on that day. That doesn't mean two hearings. That just means two bills of indictment brought on that day in the same hearing. With respect to the true bills, do you really have an objection to producing true bills? Yes, actually we do. What is that based upon? Because the true bills contain more than just the bill on indictment. They show the votes of the grand jurors. They show the witnesses that trust testified. So it is more information than the actual indictments. He can get copies of the indictments in the circuit clerk's office, as this court pointed out. They're open. He's certainly welcome to do that. So copies of the indictments you would have no objection to, but not with respect to the witnesses who testified because of the potential that there could be some reason not to provide them. That's correct. And I don't think it's up to the state's attorney's office to say, I think we can turn these grand jury documents over but not these. The statute is what it is. It's clear. We can't turn over matters occurring before the grand jury. Does the statute provide for what is to be contained in a true bill, such as witnesses and the vote? Quite honestly, I don't know that. Because I thought I read something to the effect that this was only signed by the foreman. All I know is I've seen the true bills that he's asking for. It does contain the names of a witness and the actual votes of the grand jury. So if the votes are not on there and the names of the witnesses are redacted or not attached, since an indictment, as you indicated, would be in the clerk's office, the indictment itself is a public record, there would be no objection to that. We're getting hung up over any other information that would be on there, such as witnesses and votes, you're saying? And that these are matters that took place in front of the grand jury. The indictments go to the judge. The judge signs the indictment. That's outside of the grand jury. Who puts the witnesses' names on the true bill, the state's attorney or the grand jury? I believe it's the state's attorney's office. I believe the state's attorney's office does that. I apologize. I'm not a criminal attorney. I don't prosecute, so I don't know all the details. Mr. Kaplan has also referred to the trial court order from the first FOIA case where Mr. Walker requested a copy of Nate Carter's transcript, arguing that race judicata should apply and that we should not be able to say now that this is also the Walker transcript. However, that order doesn't go nearly as far as Mr. Walker would suggest. It simply says it shall have no precedential or preclusionary effect as to any fact conclusion or analysis as to any other case except for the finding therein that the grand jury transcript that Nathaniel Carter heretofore produced is, in fact, a true copy of the grand jury transcript of Nathaniel Carter. That's it. Nowhere does it say it's not the grand jury transcript from Mr. Walker. So I don't think it can have any preclusionary effect. Is the foreman of the grand jury a secret? Is the name of the foreman? Yes. He signs the bill of indictment, so I would assume no. Even if this order says what Mr. Walker claims, it says that this is not the grand jury transcript of Mr. Walker, I think this court's decision in Peeble v. Walker would certainly trump the trial court in that case. What about the itinerary? I would agree with everything that this court has said thus far on the itinerary records. They do show the matters that were presented to the grand jury on the particular dates that Mr. Walker is seeking. They show also subpoena requests, what the matter was related to, et cetera, correct?  Subpoenas have to be presented to the grand jury for their vote. It does contain the witnesses. So in essence, it would bring forward names of individuals who might have, no bill might have been returned against them, people who might not have any criminal culpability or other innocent parties. Yes. There's a danger in that, correct? That's correct, and that's been our argument all along. I know Mr. Walker has indicated, well, we could have simply just redacted those names, but our position has been all along that this falls under the Code of Criminal Procedure, under that grand jury statute. So there's no provision allowing us to say, okay, we'll just redact these names and we'll return them over. Now, he could certainly have requested these documents under Section C-3 in the interests of justice. I don't know that he would have gotten them, but he could have done that. He never did. He's always been under FOIA, and I don't think the State's Attorney's Office, as I said, has the authority to say these documents we feel don't fall under the statute, these documents do. So they could be held in contempt of court for turning over documents that they shouldn't under the statute. I think, as discussed, the in-ray appointment of special prosecutor doesn't change the law. It supports our position that these are documents that would reveal what transpired during the grand jury proceeding. The court cited federal law in indicating that that's what was protected. I don't believe Mr. Kaplan addressed the request for a list of documents under Section V that Mr. Walker made. This is a pretty basic issue under FOIA. At the time he requested the list of documents under Section V, the State's Attorney's Office will admit that that list did not exist. It was since created and put on the website and provided to Mr. Kaplan. But FOIA doesn't provide a cause of action for failure to maintain a document under Section V. FOIA provides injunctive or declaratory relief in the event a person is denied access to a document. And a court can enjoin the public body from withholding public records in order to production of any document improperly withheld. So I don't believe he has a cause of action under FOIA for this failure to create this list of documents. I believe a mandamus action would have been more appropriate. If Mr. Briscato at that time had not created this document that he was required to create, the court certainly could have brought a mandamus action. And the final argument is on the deliberation and vote. It's been our position all along that that is absolutely protected, can never be turned over, not even in the interest of justice. I think the statute viewed as a whole, Mr. Kaplan tries to argue, well, this one section, Section B, is clear that you can absolutely get those any time. That's absolutely incorrect if you look at the statute as a whole. The State's Attorney cannot even be present during the deliberations and vote of the grand jury. People versus Steven Senzo speaks to that, where a grand jury revealed something that occurred during the deliberations to the sheriff's deputy who relayed that to the prosecutor, who then went back before the grand jury and secured a true bill, where the grand jury had already voted a no bill. And the Supreme Court said that that was an invasion of the secrecy of the grand jury, but there was no prejudice. So the Supreme Court has pretty clearly spoken about that. Yeah, and I would agree. I believe I cited the people versus Sears in the Supreme Court, where they said you can gain access to other, possibly gain access to other part of the grand jury proceedings, but not the deliberations and vote. So I believe that State's Attorney Hay-Ross has met her burden of establishing the clear and convincing evidence that there was no violation of FOIA under counts one and two of Mr. Walker's complaint. And the documents sought in counts three and four were absolutely protected by the grand jury statute. And then as to Mr. Williams, that the no bills and true bills and the itinerary records were absolutely protected by the grand jury statute, and the deliberations and vote could not ever be turned over, also protected by the grand jury statute. So summary judgment should be affirmed in this case. Thank you. Thank you. Mr. Kaplan, the photo. I'm looking at the order of Judge Dougherty, which you talk to preclusionary effect, and it says that you have no precedent for a preclusionary effect as to any fact, inclusion, or analysis of any other case except for the finding therein that they accept for it. That means you can have preclusionary effect on other cases if the exception prevails. If the condition fails, you can't. If the condition succeeds, then you can. So what is the exception? That is that the grand jury transfer of Daniel Carter, character for produce, authored about December 18, 2008, is in fact a true copy of the grand jury transfer from the proceeding before the Winnebago County Grand Jury on June 6, 2001. I mean, that's Judge Dougherty saying it is meant to have a preclusionary effect upon further proceedings and trying to figure out the identity of that document. Now, to identify the document, you have to look at it. And you can examine it. You look for smudge marks. You look for punctuation. You look for changes. Anything at all you see is different, and I can't find any difference with this document. But each time the transfers have been reduced, at the request of WAPT, it has been the same identical document. And it's talking to me about the battle for residency to Carter. Why should the appellate courts violate? How can the appellate court violate and say that Judge Judicata is set to say when it violated Judge Judicata by ignoring Judge Dougherty's statement? The issue with Judge Dougherty is what is the nature and identification of this document compared to the scenario that was once represented to be somebody else's document? Ms. LeClerc said that this is the same document that he was provided for or to him at trial. Do you know if that's true or not? Yeah, yes. Well, is it true? No, the document was presented at trial with a bunch of other documents. Biagi did not file a direct order to the court. It's saying this is his transcript. It says these are all the transcripts they gave rise to his indictment, following the simple logic that the appellate court did in the last case. All this is sufficient to indict him. And so if they presented you or your client with just the Nate Carter transcript and didn't provide you with your defendant's name transcript, what would that seem to indicate? I'm not sure. Okay. That would have to go back and re-litigate the issues of the other two cases. And I said in the brief we don't intend to do that. We just intend to get documents. Well, my point is that if you thought that the Nate Carter transcript was insufficient, don't you think you might have raised that in the criminal proceedings? He did. And did he appeal that? And if he did, was there an adjudication by the appellate court on the issue? I don't know. I don't know. I don't have a grasp of what happened there on that appeal. In Mr. Walker's case, was there an argument that the state did not comply with discovery regarding grand jury transcripts? Only to the extent that he said the transcript I got is not my transcript. The order of the court was, as I understand the court, he will get his transcript. He asked for his transcript. Not Carter's or anybody else's or anything else that might be sufficient or that would be sufficient, but give me my transcript. And so then the argument was said, here is your transcript. Got the wrong page, wrong title page. But it is your transcript. Indicate this is a transcript of a hearing from Walker. His transcript. And was that issue raised on appeal? I don't know. You haven't read it? No, I don't know. It never occurred to me. Well, it's occurring to you now. You never read it. You didn't read the underlying case? As to? The criminal case. No, it was not important to me at that time. What was important is that I did have up working at that time the factual description of a document. What the result of that document, that description was, was not important to us at that time. It was Walker that did it or didn't do it. It became important to me when I saw that that statement of fact seemed to be contradicted by what Minger brought, I said State's Attorney Minger brought out in 401. He brought out the same document. Biagi says this is Walker's. Biagi says it's Carter's. Once I talked to Biagi, Biagi says it's Carter's. That's part of the American event. And so now I said, wait a minute. How can you say it's one person's at this time and somebody else's at that time? Because it is both. That Detective Redmond's testimony was used to indict both. Yes, it's sufficient to indict both, but not when we're talking. If there is a Walker transcript or there's not a Walker transcript, it does not mean anything. There's a sufficiency of the indictment or the trial is brought against him. He may well explain that argument in a different setting, but as I see it, as it's postured now, the Pippen v. Walker case, the last one, said that the Carter transcript, when you read it all, if you believe it or if you don't, it has probable cause to show that Walker was involved in the crime. And therefore, since there is a record from the grand jury, this indictment will be okay. We're not going to reverse anything. That does not, but the issue of how, the issue of, you say that, you said that this is the transcript, that wasn't before the court. It was not, it wasn't before the court. You have to have the precise issue. How about law of the case? Pardon? The law of the case. Our ruling. Okay. We said it is the transcript that led to his indictment. Can you say that, though it was not an issue in the case? I don't know. Okay. I do know the residue of the common you can't and the collateral estoppel you can't, and I'm not sure why the law of the case would be any different, that you start saying what the law of the case is when nobody cares about that particular point of law. It's just not an issue. And so, and I did not, I did not know, you know, if things go south for us this year, and maybe I can bring it up on the petition brief here, to examine the law of the case, what the elements are, I just don't know right now. It was never brought up. It wasn't argued in there. It's something we never heard about. I read the case in preparing for today's oral argument, and I saw the issue that was raised and our determination that he got the transcript that led to his indictment. It was the mislabeled transcript that you're talking about here. So, you know, and one thing, I think your time's almost up, but is that ruling wrong? Were we wrong? Yes, I think there's, yes, I think it was wrong because, one, don't look at it before the court. Number two, there are indications, factual indications, of people describing the transcript different ways at different times, in some ways where, as a matter of summary judgment, there is not theory free from doubt. So your argument is the facts have changed then, which is another exception to the law of the case. The facts have changed. That's your argument? There's new facts? The facts have always been there. That has been, the state's attorney making different statements about the same document. The state's attorney has given different identifications of the document several times. Three times they have described what it is. Once they say it is Walker's, then they say it's not Walker's, under a motion to determine that very issue, is it Walker's or not. And then later on we asked for Walker to give the same thing that they originally said was Walker's, but later on they said it wasn't. To what end? Pardon? To what end? Question mark. Okay. If we could get, I think we would like to have, one thing we never heard, I don't recall if you said it, is that there is only one transcript. There was never a Walker transcript. There never was a Walker transcript. If the appellate court decision said under your 214.01 that the indictment was sustainable based upon the document that you've been handling, then why isn't any failure to provide you with a document with your client's name on it prejudicial error? Well, we have to take a look at the document, which I can't see. They won't turn it over. If there's a Walker transcript. Yes, but let's think this out, which is it can be one of two things or one of three things. It can either exonerate your client because it doesn't establish probable cause, or it will reaffirm the Nathaniel Carter transcript because it will be either redundant or even more incriminating, or it will be equivocal. But if there's already been a determination that the indictment has been sustained, where are you going with this? How are you prejudiced if there has already been a finding that the indictment was okay? The first point you just mentioned, if there should be another Walker transcript and we get to read it, there may be evidence by somebody in there who does something that would exonerate Walker that was not produced before trial and he could possibly have a grieving violation. We don't know what's in it until we see what's in it. We cannot know the full number. What could be in it is something to show that there's been some miscarriage of justice somehow, such as not giving over statements. There was a statement of exonerating Walker in his transcript. His testimony, you mean? Walker's testimony. The shoes that he got, those weren't the shoes that he was wearing at the time. They were Red's shoes. It was his exculpatory version, right? It would be something exculpatory that the jury should have had a right to consider with all the other evidence, to believe or not believe, give away the way they want, but he had a right to have them consider any possible exculpatory evidence and to tell you exactly what that is, I've got to see the transcript. In any event, you're looking for grading violations, right? Let's be careful. You're looking for some grading violations, are you not? Am I looking for that? Yes. That's a possibility. I can't. This is the only thing that he does. I have not grown up with criminal law. I grew up with civil law, but I do my research for the issue I'm faced with when it comes to criminal law, and I've heard grading violations and I know that's a problem, and I know that FOIA can reveal grading violations. Is there something else that can be done about further examination? Possibly. I don't know. But I won't know, and I can't tell you the import of a document until you show it to me. So you'd ask, what's the import of the document? I don't know. Let me look at it, and I'll tell you what the answer to the import is. Okay. Thank you, Mr. Katz. Thank you. We thank both parties for their arguments. A written decision will be issued in due course. The court stands adjourned. Thank you.